IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| CYNTHIA ESTELLE BOOKER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | 1:06CV00274 |
| ) | |
| WASHINGTON MUTUAL BANK, F.A., ) | |
| ) | |
| Defendant. ) | |

MEMORANDUM OPINION

OSTEEN, District Judge

Plaintiff Cynthia Estelle Booker brings this action against Defendant Washington Mutual Bank, F.A. ("Defendant"), alleging breach of contract; trespass; violations of the Real Estate Settlement Procedures Act of 1974 ("RESPA"), 12 U.S.C. §§ 2601 et seq.; and unfair or deceptive trade practices in violation of North Carolina General Statute §§ 75-1.1 et seq. This matter is before the court on Defendant's motion to dismiss Plaintiff's complaint for failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. For the reasons stated below, the court will grant the motion to dismiss.

**I. FACTUAL BACKGROUND**

The facts are presented in the light most favorable to

Plaintiff, and the allegations in Plaintiff's complaint are taken as true for the purpose of ruling on Defendant's motion.[1] In February 2000, Plaintiff obtained a refinance loan (the "loan") from Greenpoint Mortgage Funding, Inc. ("GMF"), who eventually transferred the servicing of the loan through several companies to Homeside Lending, Inc. ("Homeside"), the predecessor in interest to Defendant. The loan was secured by a deed of trust Plaintiff granted to GMF on a parcel of real property (the "parcel"). As a term and condition of the loan, GMF required Plaintiff to establish an escrow account out of which GMF could pay insurance premiums and property taxes on the parcel.

In August 2001, Homeside disbursed approximately eight hundred dollars from Plaintiff's escrow account to pay property taxes on a piece of land other than Plaintiff's. In September 2001, Safeco Insurance Company ("Safeco") billed Homeside for hazard insurance premiums on Plaintiff's parcel for the coming year. Instead of paying the premiums, Homeside purchased a lender-placed hazard insurance policy on the parcel at terms known by Homeside to be disadvantageous to Plaintiff and as a result of which Homeside received "kickback" payments for

---

[1] In considering a motion to dismiss, the court must construe the facts in the light most favorable to Plaintiff and accept all well-pleaded allegations as true. See Jenkins v. McKeithen, 395 U.S. 411, 421-22, 89 S. Ct. 1843, 1849 (1969) (citations omitted); Randall v. United States, 30 F.3d 518, 522 (4th Cir. 1994) (citation omitted).

providing business to the insurance agent.  When Homeside did not pay the premiums on the Safeco policy, Safeco cancelled the policy.  Plaintiff later obtained hazard insurance from Allstate Insurance Company ("Allstate"), and although Allstate informed Homeside of Plaintiff's new policy and asked Homeside to cancel the lender-placed policy, Homeside failed to do so.

In January 2002, Homeside performed an escrow analysis on Plaintiff's loan account for the purpose of increasing the amount of Plaintiff's monthly loan payment without cause.  In June, July, August, and October 2002, Plaintiff attempted to pay her monthly loan installment in full, but Homeside rejected the payments.  In March and November 2003, an agent of Homeside allegedly trespassed on Plaintiff's land and changed the locks securing the building.  Based on Homeside's actions, Plaintiff brings this action against Defendant for breach of contract, trespass, violations of RESPA, and unfair or deceptive trade practices in violation of North Carolina General Statute §§ 75-1.1 et seq.  In addition to compensatory damages, Plaintiff seeks treble damages pursuant North Carolina General Statute § 75-1.1 or, in the alternative, punitive damages.

## II. PROCEDURAL HISTORY

Prior to filing the complaint at issue, Plaintiff filed two other complaints based on Homeside's actions.  The first was a pro se complaint filed against Homeside in Guilford County in

October 2002, the allegations of which set forth no cognizable federal cause of action.  Homeside removed the case to this court which dismissed the complaint without prejudice for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6).  The second was a pro se complaint filed against Defendant in Guilford County in March 2004, alleging common law negligence and trespass and violations of RESPA, the Fair Credit Reporting Act, and the Fair Debt Collection Act.  Defendant removed the case to this court which again dismissed the complaint on Rule 12(b)(6) grounds.  On February 14, 2006, Plaintiff filed the complaint at issue, and Defendant once again removed the case to this court.  In lieu of an answer, Defendant filed a Rule 12(b)(6) motion to dismiss.  Although Plaintiff received additional time to file a response to Defendant's motion, Plaintiff has not done so.

**III. STANDARD OF REVIEW**

A motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure tests the legal sufficiency of a challenged pleading, but it does not resolve disputes surrounding the facts or the merits of a claim.  Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4th Cir. 1992).  A court must determine only if the pleading at issue fails to state a claim upon which relief can be granted.  Fed. R. Civ. P. 12(b)(6).  The key issue is not whether the plaintiff will prevail on his claim,

but whether he is entitled to offer evidence in support of the claim.  Revene v. Charles County Comm'rs, 882 F.2d 870, 872 (4th Cir. 1989) (citation omitted).  A court should dismiss a case on Rule 12(b)(6) grounds "only in very limited circumstances," Rogers v. Jefferson-Pilot Life Ins. Co., 883 F.2d 324, 325 (4th Cir. 1989), specifically, only if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."  Conley v. Gibson, 355 U.S. 41, 45-46, 78 S. Ct. 99, 102 (1957).  In determining whether to dismiss under Rule 12(b)(6), the pleading must be liberally construed in the light most favorable to the nonmoving party, and the allegations made therein must be taken as true.  Jenkins v. McKeithen, 395 U.S. 411, 421-22, 89 S. Ct. 1843, 1849 (1969) (citations omitted).

**IV. ANALYSIS**

    **A.    Breach of Contract**

Most of Plaintiff's factual allegations relate to her contention that Homeside's actions and omissions constitute a breach of "the contract between GMF and [Plaintiff]," which was binding on Homeside as GMF's successor in interest.  (Compl. ¶¶ 21-23.)  Plaintiff does not expressly specify that her loan agreement with GMF is also what she generically refers to as "the contract."  Nevertheless, the court finds that "the contract" in

but whether he is entitled to offer evidence in support of the claim.  Revene v. Charles County Comm'rs, 882 F.2d 870, 872 (4th Cir. 1989) (citation omitted).  A court should dismiss a case on Rule 12(b)(6) grounds "only in very limited circumstances," Rogers v. Jefferson-Pilot Life Ins. Co., 883 F.2d 324, 325 (4th Cir. 1989), specifically, only if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."  Conley v. Gibson, 355 U.S. 41, 45-46, 78 S. Ct. 99, 102 (1957).  In determining whether to dismiss under Rule 12(b)(6), the pleading must be liberally construed in the light most favorable to the nonmoving party, and the allegations made therein must be taken as true.  Jenkins v. McKeithen, 395 U.S. 411, 421-22, 89 S. Ct. 1843, 1849 (1969) (citations omitted).

**IV. ANALYSIS**

    **A.    Breach of Contract**

Most of Plaintiff's factual allegations relate to her contention that Homeside's actions and omissions constitute a breach of "the contract between GMF and [Plaintiff]," which was binding on Homeside as GMF's successor in interest.  (Compl. ¶¶ 21-23.)  Plaintiff does not expressly specify that her loan agreement with GMF is also what she generically refers to as "the contract."  Nevertheless, the court finds that "the contract" in

Plaintiff's complaint must be the loan agreement between Plaintiff and GMF.

A breach of contract claim is a state law claim. Therefore, the court must apply North Carolina law to the breach of contract issues presented. North Carolina's statute of limitations requires a breach of contract action to be filed within three years of accrual. N.C. Gen. Stat. § 1-52(1) (2006). Breach of contract claims accrue at the time of the alleged breach. <u>Martin v. Ray Lackey Enters., Inc.</u>, 100 N.C. App. 349, 357, 396 S.E.2d 327, 332 (1990) (citation omitted).

Defendant notes that Plaintiff's breach of contract allegations, including assertions that Homeside improperly disbursed escrow funds, rejected loan payments, failed to pay the Safeco insurance premiums, and purchased lender-placed insurance, all occurred between August 2001 and October 2002, as specified in the complaint. Plaintiff did not dispute Defendant's proposition by filing a response to the motion to dismiss. The only event Plaintiff claims occurred after October 2002 is that Homeside trespassed on the parcel twice in 2003 to change the locks. This allegation does not appear to relate to any contract between the parties, and Plaintiff does not allege that it violates a specific contractual provision. If the 2003 allegations stated a claim, it would be a separate claim for the tort of trespass. Therefore, all the allegations supporting a

6

Case 1:06-cv-00274-WLO-RAE    Document 9    Filed 02/09/07    Page 6 of 15

breach of contract claim occurred before November 2002. Because Plaintiff did not assert her breach of contract claim until February 2006, over three years after the cause of action accrued, Plaintiff's claim is barred by the statute of limitations and should be dismissed.

**B.  Trespass**

Plaintiff further claims that on two occasions in 2003, at the direction of and as an agent of Homeside, First American Field Services, Inc. trespassed upon Plaintiff's parcel and changed the locks on the building. Trespass is also a state law claim, so the court must apply North Carolina law. The elements of a claim of trespass in North Carolina are (1) the plaintiff was in possession of the land at the time of the trespass, (2) the defendant made an unauthorized entry onto the land, and (3) the plaintiff was injured by the invasion of his possessory rights. Taha v. Thompson, 120 N.C. App. 697, 703-04, 463 S.E.2d 553, 557 (1995) (citing Matthews v. Forrest, 235 N.C. 281, 283, 69 S.E.2d 553, 555 (1952)).

Federal pleading requirements are not overly strict, but bare conclusions which are unsupported by specific allegations of material fact are insufficient to state a claim upon which relief can be granted. See Simpson v. Welch, 900 F.2d 33, 35 (4th Cir. 1990) (citations omitted). Instead, a plaintiff must allege facts that support each element of the claim in terms that are

7

not vague or conclusory.  <u>Dickson v. Microsoft Corp.</u>, 309 F.3d 193, 201-02 (4th Cir. 2002).  Rather than alleging the facts needed to support each element of a claim of trespass, Plaintiff made the conclusory statement that an agent of Homeside trespassed upon the parcel.  This bare allegation is insufficient to meet the pleading requirements of the Federal Rules, and therefore, Plaintiff's claim for trespass should be dismissed.

**C.  Real Estate Settlement Procedures Act**

Plaintiff next alleges that Homeside's acts and omissions constitute violations of RESPA.  RESPA, codified at 12 U.S.C. §§ 2601 <u>et seq.</u>, seeks to improve the residential real estate settlement process to, among other things, eliminate kickbacks and referral fees that increase the cost of settlement services and reduce the amount buyers must place in escrow accounts to pay real estate taxes and insurance.  12 U.S.C. § 2601(b) (2006).

Nowhere in Plaintiff's complaint does she specify which provisions of RESPA Homeside violated.  Plaintiff merely sets forth several factual allegations that could form the basis for a RESPA claim, and then she draws the general conclusion that Homeside's actions are in violation of RESPA.  First, Plaintiff claims that in 2001, Homeside failed to make various payments out of Plaintiff's escrow account for property taxes and insurance premiums.  Section 2605(g) of RESPA provides that if the terms of a mortgage loan require a borrower to make payments to a loan

8

servicer for deposit into an escrow account to assure payment of taxes and insurance premiums, the loan servicer must make timely payments from the account for those expenses when they become due. § 2605(g). Section 2614 requires that claims pursuant to section 2605 be brought within three years of the date of the occurrence of the violation. § 2614. The actions purportedly in violation of section 2605 occurred in 2001, well over three years before Plaintiff filed her complaint. Therefore, despite whether Plaintiff's allegations are true, Plaintiff's section 2605 claim is time-barred and should be dismissed.

Plaintiff also alleges that in December 2001, Homeside purchased lender-placed hazard insurance on the parcel from an insurance agent with whom Homeside had entered into an undisclosed compensation agreement to receive kickback payments in exchange for providing insurance business to the agent. Section 2607(a) of RESPA prohibits kickback payments made pursuant to an agreement such as that which Plaintiff alleges existed between Homeside and the lender-placed insurance policy agent. See § 2607(a). Section 2614 provides that claims for violations of section 2607 must be brought within one year from the date of the occurrence of the violation. § 2614. The actions Homeside took which may violate section 2607 occurred in 2001, and Plaintiff did not file her complaint until nearly five

years later. Therefore, any valid section 2607 claim Plaintiff had is also time-barred and should be dismissed.

The only other fact Plaintiff alleges that relates to RESPA is that Homeside performed an escrow analysis on Plaintiff's loan account in 2002 for the purpose of increasing the amount of Plaintiff's monthly loan payment without cause. However, it is not clear from this assertion standing alone what, if any, RESPA provision Homeside may have violated. Although the pleading requirements in federal courts are modest, Federal Rule of Civil Procedure 8(a)(2) requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). In addition, the statement must "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." Conley v. Gibson, 355 U.S. 41, 47, 78 S. Ct. 99, 103 (1957). Because it gives no indication of a particular claim for relief under RESPA, Plaintiff's bare allegation regarding an improper escrow analysis is not sufficient to state a claim for a RESPA violation. Because the other allegations supporting cognizable RESPA claims are time-barred, Plaintiff's RESPA claim should be dismissed.

**D.  Unfair or Deceptive Trade Practices**

Plaintiff further claims that Homeside's acts and omissions constitute unfair or deceptive trade practices in violation of North Carolina General Statute §§ 75-1.1 et seq., entitling her

10

to treble damages.  Section 75-1.1 prohibits practices in or affecting commerce that are "immoral, unethical, oppressive, unscrupulous, . . . substantially injurious to customers[2] [,] or "ha[ve] the capacity or tendency to deceive."  Branch Banking & Trust Co. v. Thompson, 107 N.C. App. 53, 61-62, 418 S.E.2d 694, 700 (1992) [hereinafter BB&T] (quoting Johnson v. Phoenix Mut. Life Ins. Co., 300 N.C. 247, 263, 265, 266 S.E.2d 610, 621-22 (1980)).  A claim for unfair or deceptive trade practices in North Carolina must be brought within four years of the time in which the cause of action accrues.  N.C. Gen. Stat. § 75-16.2 (2006).  Such a cause of action accrues at the time the alleged violation occurs.  United States v. Ward, 618 F. Supp. 884, 902 (E.D.N.C. 1985) (citations omitted).  Most of Plaintiff's allegations are barred by the statute of limitations from stating a cause of action under Chapter 75.  Plaintiff alleges only three sets of events that may have occurred within the limitations period.

First, Plaintiff claims that on several occasions in 2002, Homeside rejected Plaintiff's monthly loan installment payment along with amounts to be deposited in her escrow account without adequate justification.  These allegations provide the basis for a breach of contract claim.  Plaintiff also claims that even

---

[2] While BB&T refers to "customers," the Johnson opinion uses the word "consumers."

11

though she obtained hazard insurance on the parcel and asked Homeside to cancel its lender-placed policy pursuant to the contract between the parties, Homeside refused to acknowledge Plaintiff's new insurance policy and insisted on maintaining the lender-placed policy. This allegation also supports, if anything, a breach of contract claim. It is well settled that unfair or deceptive trade practices are distinct from breaches of contract, and that a breach of contract alone, even if intentional, is insufficient to provide the basis for an unfair or deceptive trade practices claim. BB&T, 107 N.C. App. at 62, 418 S.E.2d at 700 (citations omitted). Instead, "a plaintiff must show substantial aggravating circumstances attending the breach to recover under [section 75-1.1] . . . ." Id. (quoting Bartolomeo v. S.B. Thomas, Inc., 889 F.2d 530, 535 (4th Cir. 1989)). The Fourth Circuit has held that even a "complete and abrupt abandonment of the contractual relationship" does not necessarily amount to "substantial aggravating circumstances." Bartolomeo, 889 F.2d at 535 (quoting United Roasters, Inc. v. Colgate-Palmolive, 649 F.2d 985, 992 (4th Cir. 1981)). For the court to find such factors, a plaintiff "would probably need to demonstrate deception either in the formation of the contract or in the circumstances of its breach." Id. Nowhere in the complaint does Plaintiff allege factors sufficient to constitute "substantial aggravating circumstances" within the meaning of the

12

Fourth Circuit's standard. Plaintiff alleges only simple breaches of contract, and these are insufficient to state a claim pursuant to section 75-1.1.

The only remaining allegation that is not time-barred by the four-year statute of limitations on Chapter 75 claims is the conclusory statement that an agent of Homeside twice trespassed upon Plaintiff's land and changed the locks. The Court of Appeals of North Carolina has suggested that trespass by a person or entity engaged in business with the plaintiff as its consumer may be an unfair or deceptive trade practice in violation of section 75-1.1.[3] Nevertheless, as discussed above, Plaintiff has not alleged sufficient facts necessary to state a claim for trespass, so her conclusory allegations likewise do not state a claim for unfair or deceptive trade practices pursuant to Chapter 75. Because she did not allege sufficient facts that occurred before the Chapter 75 statute of limitations expired, Plaintiff's section 75-1.1 claim should be dismissed.

---

[3] See, e.g., Taha v. Thompson, 120 N.C. App. 697, 704, 463 S.E.2d 553, 558 (1995) (holding that a section 75-1.1 claim based upon trespass and conversion by a landlord is at least an issue for the jury); Love v. Pressley, 34 N.C. App. 503, 515-17, 239 S.E.2d 574, 582-83 (1977) (holding that on the same facts as Taha, a jury properly found defendant's conduct to be in violation of section 75-1.1 and noting that the section applies because defendant lessor was a person engaged in business and plaintiff lessees were part of the consuming public).

**E.  Punitive Damages**

In the alternative to treble damages under section 75-1.1, Plaintiff requests punitive damages.  Plaintiff's claim for punitive damages is inappropriate for several reasons.  North Carolina General Statute § 1D-15 sets forth standards governing the recovery of punitive damages.  First, the statute provides that punitive damages may be awarded only if the plaintiff shows that the defendant is liable for compensatory damages.  N.C. Gen. Stat. § 1D-15(a) (2006).  Each of Plaintiff's claims will be dismissed in the order accompanying this memorandum opinion.  Therefore, because Plaintiff is not entitled to compensatory damages, her claim for punitive damages should also be dismissed.

In addition, the essence of Plaintiff's complaint is the breach of contract claim.  Section 1D-15(d) provides that "[p]unitive damages shall not be awarded against a person solely for breach of contract."  § 1D-15(d).  The Supreme Court of North Carolina has held that where the breach of contract is accompanied by a tortious act that has some element of aggravation, punitive damages may be allowed.  Stanback v. Stanback, 297 N.C. 181, 196, 254 S.E.2d 611, 621 (1979).  As discussed above, Plaintiff did not state a sufficient claim for an independent tort to accompany her breach of contract allegations.  Therefore, even if Plaintiff's complaint had been

14

timely filed and the allegations therein were true, Plaintiff would not be entitled to an award of punitive damages.

Furthermore, section 1D-15(a) requires that one aggravating factor, either fraud, malice, or willful or wanton conduct, be present and relate to the injury for which compensatory damages are awarded. § 1D-15(a). Plaintiff does not expressly state that any of Homeside's actions included a heightened level of fault for which to allow punitive damages, nor does Plaintiff allege any facts showing that Homeside's conduct rose to a fraudulent, malicious, or willful or wanton level. As such, her claims, even if they had merit, would not entitle her to punitive damages. For each of these reasons, Plaintiff's claim for punitive damages should be dismissed.

## V. CONCLUSION

For the reasons set forth above, Defendant Washington Mutual Bank's Motion to Dismiss will be granted. Plaintiff's breach of contract claim and her time-barred claims brought pursuant to sections 2605 and 2607 of RESPA will be dismissed with prejudice.

An order and judgment in accordance with this memorandum opinion shall be filed contemporaneously herewith.

This the 9th day of February 2007.

／s／ _____
United States District Judge

Case 1:06-cv-00274-WLO-RAE   Document 9   Filed 02/09/07   Page 15 of 15